We will hear argument next in Case 21-984, Helix Energy Solutions v. Hewitt. Mr. Clement? Mr. Chief Justice, and may it please the Court, Respondent earned over $200,000 a year and concededly performed executive functions in supervising a dozen or more workers. He likewise was guaranteed at least $963 in any week in which he worked a minute. He is thus exempt from the overtime laws under the specialized streamlined exemption for highly compensated workers set forth in Section 601. Respondent nonetheless insists that he is entitled to hundreds of thousands of dollars in overtime because his substantial pay was calculated based on a day rate and in many weeks his total compensation was much larger than his guaranteed pay and thus he flunked the test of Section 604B and its reasonable relationship test. But Section 601 incorporates only the salary basis test of Section 602 and not the separate minimum guarantee plus extra rules of Section 604. Indeed, at the very moment that Section 601 was promulgated, the agency broke apart Section 602 and Section 604. Section 601 has never incorporated this minimum guarantee plus extra rules of Section 604 for very good reason. Section 601 itself addresses the questions of extras on top of the minimum guarantee and addresses them in terms that are both duplicative of Section 604A and contradictory of Section 604B. In particular, Section 601 authorizes total compensation to dwarf the minimum guarantee in terms that Section 604B would deem unreasonable. Worse still, Section 604 looks unfavorably on compensation in excess of the minimum guarantee while Section 601 looks at the same thing, compensation in excess of the minimum guarantee, and says that's precisely what makes you highly compensated and therefore exempt. Respondent's position would put the regulations on a collision course. It would ignore the streamlined nature of 601 and it would divorce the regulations from the statutory text. The Court should reverse. Mr. Clement, the government says that its starting point is whether or not you've established that the respondent is salaried, and he argues that he does not receive his compensation on a salary basis. I guess the government's argument is that once you make that determination, you're on an entirely different track from being on a wage basis. And although your case, in this case, respondent makes quite a bit of money, you're suggesting that we can bypass determining whether or not he is on a salary basis. So, one, is that determination of being on a salary basis a sine qua non of bypassing all of these regs that you're talking about? If not, how do we establish that you're highly paid? Why don't we just consider your highly paid respondent here to simply be a wage earner, but a highly paid wage earner? So, Justice Thomas, the way I'd respond to that is that Section 601 does not require a worker to be a salaried worker or to get any particular sort of, like, be in general or mostly paid on a salary basis. It's very specific. It says the total annual compensation has to include at least $455 a week on a fee or salary basis. So, that requires you to look at Section 602, but then to figure out how much you get on a salary basis. Section 602 doesn't, again, tell you whether you're mostly a salaried worker or a salaried worker in the abstract. It's very specific. And the test is really, what is the amount that you receive in any week in which you work at least one minute? And for this worker, that was $963 or more. And that $963 was a guarantee. So, if you work even a minute in a week, you're going to get $963. That's a predetermined amount. That satisfies what the only requirement vis-à-vis a salary basis in Section 601, which is that your total annual compensation include at least $455 on a fee or salary basis. I don't read the regulation that way. So, can you help us to understand why you are saying that the amount is the only relevant marker of the applicability of 601? I thought it said that the person's total annual compensation must include at least $455 per week paid on a salary or fee basis. And then we have a separate regulation, 602, which I thought at the beginning you conceded applied. Maybe I misheard you, but I thought you said that 601 incorporated 602's salary basis test. Am I right about that? You're right about that. All right. And so, salary basis, I think, then becomes the question. And what it means to be on a salary basis under 602 is not just some sort of minimum level of compensation. In fact, the $455, I think, doesn't even appear in that section. In fact, when it talks about what it means to be paid on a salary basis, it appears to be looking at the predictability and the regularity of the payment, not the amount. But the predictability it's looking for is the guaranteed amount that you know you will get paid at a minimum if you work a minute in a week. No. I don't think so. And let me tell you why. Isn't the predictability that they're talking about and the regularity that they're talking about the total amount that you make in a week? So that, for example, a salaried employee is one who you could conceive of as being eligible for direct deposit, that it's someone who knows at the end of every week the predetermined amount that they're going to make, whereas Mr. Hewitt at the end of the week doesn't know. One week it could be the minimum amount because he worked a minute. Another week it could be much more than that because he worked more than a minute. Why is that not the way we should think about salary basis given this regulation? Because, with all due respect, the regulation is quite specific that there's a difference between salary, which is a concept, and compensation. And 602 itself is absolutely specific that the salary can be all or part of the employee's compensation. So this is, with all due respect, not a provision that's trying to say, we want a steady stream of your top-line income over the course of the year. What it's concerned about is your bottom-line income. So all it asks you is, if you work a minute, what are you guaranteed to get that week? And if that amount is over 455, and I grant you, 602 itself doesn't tell you the level, but that comes right from 601. And 601 tells you that what you're looking for is not whether the employee gets most of his compensation on a salary basis or the lion's share of his or her compensation on a salary basis. It's asking you a single question. Does the total annual compensation include at least $455 on a salary basis? And the answer for Respondent is yes, because every week in which he worked, he knew at the beginning of the week that he was going to get at least $963. And, with all due respect, the regulation doesn't ask for stability above that. Your point is the two words, or part, in 602. If it's constituting all of the employee's compensation, then that would be different. Or part is critical to your 602 argument. It is critical, but it doesn't stand alone, of course. Because 601 itself draws the distinction between compensation, total annual compensation, and only $455 a week has to be paid on a salary basis. And that's very important, because if you multiply 455 by 52, that gives you a number less than $24,000. Well, why doesn't that or part reference other things that could be added? I mean, we have this other concept happening in the regulation about, you know, predetermined amount that would be your salary, plus other bonuses and things that are coming in. I just don't understand why or part eviscerates the sort of common sense understanding of the distinction between salaried workers being those who have a steady stream of predetermined amounts week to week, versus daily workers or shift workers or hourly workers whose weekly amounts can vary dramatically. And I think that's what the Department of Labor cared not only about the minimum amount, I would think, in this EAP regulation, the way it's set up, but also about this predictability. Because 455 is not a very high number in terms of people who would be exempted. So it seems to me, from the way that this is constructed, what they're trying to do is make sure that there's a steady stream of income coming in, no matter how much you work, for this category of workers. So let me say this. I think that might be one of the purposes behind 604B, but it's not one of the purposes behind 602, and it is demonstrably not the purpose behind 601. Because under 601, you're right, $455 a week guaranteed isn't that much. It's $24,000 a year. So the prototypical worker who qualifies under the high compensation exemption under 601 is going to make three quarters more than that, or more. And all of that, as the regulation provides, can be additional non-discretionary income. So they are decidedly not concerned under 601 about the highly paid workers for evening it out over the years. But 600 has the same $455 level. So you're now suggesting that 601 is distinguishing highly compensated at the $455 level, but I see that in 600, which is not in the highly compensated. So it seems to me they weren't making a distinction about the minimum amount. Well, they were making a distinction about it for 601 purposes. And 601 doesn't incorporate to 600. It's got its own language. It's slightly different. I'm not going to make a big deal out of the difference, but 600 says that the person's salary, their compensation is they're compensated on a salary basis, where 601 simply says it includes $455 a week paid on a salary basis. But what's so significant about 601 and sets it apart is that the prototypical worker who is covered by the exemption is making $100,000 or more. Yet all the regulators cared about is that the base be $24,000. Mr. Clement, salary basis, I think of salary basis as what am I paid for the week? I think of fee, what am I given as an amount? I think of hourly or shift in their ordinary meaning. What am I paid for the hour? What am I paid for the day? Your reading of this takes out basis completely. You're thinking that if I work an hour and get the minimum, that's my salary. But I read 602 and it says, receives each pay period on a weekly or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed? So you're requiring an hour of work or a minute of work. But that's not what the regulation says. The regulation says, what are you paying me for the week? What it's saying is that it's a predetermined amount that can't be subject, as you say, to reductions for the quality or the quantity of the work. And that perfectly describes the $963 that this worker was guaranteed in a week. Now, we can make more on top of that, but that's not the concern of this regulation. That's additional compensation. What do we do with the second part of purpose of 602, which is to ensure, I thought the reason for 602 was to ensure that an employee who wanted to take a Friday afternoon off wouldn't be penalized or wanted to do something else or didn't want to start on Monday but on whatever day they wanted to start. These employees don't have that discretion. They're not paid for any hour they take off. They're not paid for any part of the day they miss. So how does that fit the question of a salary basis? Or how does that fit the definition of a salary basis? I think with all due respect, I think the problem is that 601 doesn't ask, is this employee primarily paid on a salary basis? It doesn't ask whether they can take a day off and how it will affect their pay. But you tell me 601 says you have to fit 602, that 602 is incorporated. But only for a very limited purpose, which is to figure out whether total annual compensation includes at least $455 a week paid on a salary basis. And then if you go through 602, 602 does not address the concern that your guaranteed amount is too low vis-à-vis your total compensation. That's addressed, if at all, only in 604. Exactly. And so what you're asking us to do is take an hourly wage earner and take them out of 604 and take them out of 604, which is the only provision that deals with someone who's not paid on a salary basis. So with respect, I'm not asking you to do anything in particular with an hourly worker. The people who our position will affect... This guy is an hourly worker. Well, he's a daily worker. Daily or hourly, but he's not a weekly worker. Meaning only if he decides to stay. His pay is calculated on a daily basis. But our position affects two classes of people, just to be clear. There's a class of people, and respondent is prototypical, who have a day rate that's above the weekly minimum that's specified in 601. There's another group of worker that's really the second half of the circuit split, and this is the Anani case from the Second Circuit and the Litz case from the First Circuit. And these are individuals whose pay is calculated on an hourly basis, but they're given a minimum guarantee on top of that, $1,000, $2,000, whatever it is. And I think if you go through the regulation and look at what 602 requires, you would see that whether it's a person whose daily rate is above the weekly minimum or somebody who gets that kind of weekly guarantee, they satisfy the terms of 602. Again, 602 doesn't say are you generally paid in a salary basis. It has a definition of salary basis that allows you to answer the question that's relevant under 601. I'm not sure I get it, Mr. Clement. So 601 sends you to 602 because 602 tells you what salary basis means. That we can all agree on. Okay, but can I just stop you there? Not really. Okay. So what does salary basis mean according to 602? And 602 is a clunker of a sentence, right? So you have to read it pretty carefully. But there's this language here which says on a weekly or less frequent basis. And the question is should we understand it the way I think Justice Sotomayor was understanding it, which is is the predetermined amount calculated on a weekly or less frequent basis, in which case he doesn't get it because his pay is calculated on a daily basis. Or does it mean something else? And if so, what else could it mean given this language that's right here in Section 602 starting us off that the predetermined amount should be on a weekly or less frequent basis? So, Justice Kagan, the sort of frequency of the basis or week is not modifying calculation, which is not a word that appears in 602 at all. It's modifying the word received, which happens to dovetail perfectly with the word in 601, which is paid on a salary basis. Yes, I think that that's what this depends on is what is the weekly basis modifying? Is it modifying the predetermined amount or is it modifying the receipt? That seems right to me. And, you know, this is a clunker of a sentence, but I would think given all the different ways that this regulation uses the idea of weekly basis, daily basis, you know, et cetera, et cetera, hourly basis, et cetera, et cetera, that what this regulation is talking about is how is your pay calculated? Is it calculated on a daily basis, in which case you can still be exempted because you can go to 604 and be exempted, but you don't fit under Section 604. So if a daily basis, you can be exempted under Section 604. 602 says it's an exemption for people whose pay is on a weekly basis, and you don't fit that either because Mr. Hewitt's pay is not on a weekly basis. So you're out of 602, you're out of 604, you're out. So a funny thing happens when you go to 604, though, which is it has this phrase may be computed on an hourly, daily, or shift basis. And so I think if you just look at 602 alone, received means received and not calculated or computed. But I think that inference is strongly supported. This is not an agency that didn't know how to use the words computed or calculated. They used that in 604. So I don't think it's a fight between whether on a weekly basis modifies predetermined amount or received. It's really their position requires you to stick an entirely different word in the sentence, which is calculated. How often did he receive pay? He received pay on a biweekly basis, so every other week. And in that biweekly, how much was he, what was the minimum he would receive? He knew he would receive, if he worked two weeks during that period, he knew he would receive at least $963 times two. And if he only worked one, he would receive $963. And the regulation is explicit, which I think also underscores that it's not a stability regulation. The regulation is explicit. If you don't work a minute in a week, it's fine for you to get nothing. If you tell a client, Mr. Clement, that he has to pay you on an hourly basis, are you referring to your hourly billable rate or are you saying that the client has to give you a check every hour? Well, I would probably mean that he needs to ultimately pay me, but if I tell him... Right, but it has nothing to do with the receipt every hour. It has something to do with, in the end, when he pays you, every two weeks, every month, every year, it's going to be on an hourly basis. That's exactly what this regulation says. If I'm providing legal services to somebody who I think is on the verge of bankruptcy, I might well tell them, look, I need to receive the money every day. Well, you might tell him that, but then you would say considerably more. You would not just say, pay me on an hourly basis. You would say, really, I mean that you have to give me a check on an hourly basis. And if you don't say that, everybody knows that an hourly basis means you're getting paid X dollars, you fill in the blank, you know, per hour. I respectfully disagree. I think you're giving insufficient weight to the word receive. If I told a client I need to receive on an hourly basis $600, I'm probably not going to get that client because that's a pretty tough demand, but I think if I use the word receive, I'm making clear I need to receive it. And, again, this dovetails perfectly with 601 because 601 says paid on a salary or fee basis. So from the perspective of the employer, it's what you pay. From the perspective of the employee, it's what you receive. Mr. Kuhlman, can I ask you about the relationship between 601 and the rest of the EAP exemption regulation? Your question presented suggests that it's standalone and you use that term, and I was a little concerned about it because when I look at the structure of the entire regulation, when you start at the beginning, at its title, it says this is defining and delimiting the exemptions for executive, administrative, professional, computer, and outside sales employees. It doesn't say highly compensated employees. When you look at the subparts of the regulation, they have a subpart for executive, a subpart for administrative, a subpart for professional, a subpart for computer. There's no subpart for highly compensated. And the government says highly compensated is actually just a subset of these other categories. It is the fact that, you know, a person who is in each of these other categories with the exception of computers has to be paid on a salary basis, and some of those people are going to be making much more than the $455 minimum. Those are the ones we'll call highly compensated for the purpose of 601 and allow them to have this shortcut through. So can you talk a little bit about why it is? First of all, does Mr. Hewitt satisfy any of the other parts of this regulation? You home right in on 601. And how are we to understand that this is really about the kind of employee who, in my view, would have the regularity and predictability of a salary versus what some people have called the kind of eat what you kill dynamic that you only get paid when you work and not a dollar more? So, Justice Jackson, I think, first of all, I think you're right to say that the highly compensated workers exemptions is one way to qualify for the statutory exemption for executive, administrative, and professional employees. And you know that from the structure of the statute. Ultimately, there's a statutory exemption. But there is pretty clearly, from the regulations, two different ways to qualify for the statutory EAP exemption. One way is to do it through the executive exemption, the administrative exemption, and the professional exemption, which is 551.100, 551.200, 551.300. But there is an alternative way to qualify for the EAP exemption under the statute, and that is Section 601. And it is the thing that is streamlined and different. Now, we know that from the text of the regulation itself, which talks about being exempt under this section. And we know it from, if you go back to the very beginning, 551.0, when it explains how this whole thing works. It goes through the various subparts. And then it describes subpart G, which is about salary. And it says that it generally tells you what the salary requirements are, but then it also provides an exemption for highly compensated workers. Okay, but let me limit. I have two questions. Would you answer the argument on the other side that the interpretation that you are offering us would have very deleterious effects on lower compensated workers? So I don't think this would have any deleterious effects on lower compensated workers. Your interpretation is 602. Yeah, it would not have any negative effects on lower compensated workers, because if you're a lower compensated worker, you would still have to satisfy 604. And our principal argument, really the question presented here, is that if you're a highly compensated employee, all you have to satisfy is 602, and you don't have to go to 604. So there's no effect here, really, on lower compensated workers at all. They still have to comply with Section 604. And I think to the contrary, the problem with the government's position here is in their own reg. In 601 subsection C, it says that high compensation is a strong indicator of exempt status. But the government seems to forget about that. But the point is, I mean, if you look at 604B, it's a somewhat puzzling provision, because it's a provision that says that we don't want you to make too much money in addition to your minimum guarantee. So if you're guaranteed by salary $24,000 a year, if you make up to $12,000 in extra, that's okay. But if you can make $24,000 in extra, that's not okay. And that's puzzling enough on its face to me, because I personally prefer to make the extra $24,000 instead of the extra $12,000. But I guess what they're concerned about there is there may be some misclassification with lower compensated workers, and so they need to police that. But the reason you don't need to police that for highly compensated workers is what the government itself tells you on the face of the reg, which is high compensation is a strong indicator of an exempt status. Second question. At the end of its brief, the government says, They say, We understand that the situation of employees who work out on these oil rigs is different, but you could just alter the pay structure. It's pretty easy to alter the pay structure to avoid the result that you want to avoid here. Are they right about that? I mean, they are right that it is possible to change the pay structure, but I think it's revealing. I mean, one of the options they give us to change the pay structure is we have to up the minimum guarantee to something like $4,000 an hour so that the minimum guarantee has a certain reasonable relationship to the additional compensation. But if there's one thing I thought that the regs were pretty clear about is that all the total annual compensation had to include was $455 per week paid on a salary basis, not $4,000 paid on a salary basis. So I think their alternative way of doing this just shows that they are really deviating from what the regulation applies. And of course, nothing we can do prospectively to change things is going to avoid massive, massive windfalls. Mr. Clement, how does your view of this deal with nurses? We got a brief from them to say that your view would basically destroy the health care industry because nurses are already kept on for more than 12 hours, often 12 hours a shift, days on end, because there's a shortage of them. But your view is, well, if they're given a daily rate of X and hourly after that, that would equal 973, and that's okay. They're making the minimum, correct? Well, I think they would also have to satisfy the other parts of the sort of short-form test. But if there's somebody who satisfies every part of the exemption, then I don't think I'm mis- How does this promote the second part of the SSLA, which was, our case law has said a major goal of the LSA was preventing overwork and the dangers of overwork. This was crucial to the definition of what a salary was, an employee was, but it also promotes worker safety and well-being. Hard to imagine how forcing someone to work 84 hours a week, 28 days straight, promotes that part of the SSLA when you're not giving them a guaranteed minimum. Or you're not giving them a minimum wage in the way 604 is looking at it. So obviously we think that, you're right, we're not giving them, we're not satisfying 604. We are giving them a minimum weekly guarantee. But I think the critical thing is to go back to the statute. I mean, yes, the statute is concerned about sort of overwork or sort of not dividing jobs up for certain workers. And then the statute tells us who's exempt. And what the statute says is bona fide executive, administrative and professional employees. And what's so puzzling to me about this case is my friends on the other side concede that the respondent is an executive. And so under the statute, this is the easiest case ever. Thank you. Counsel, Justice Thomas? Just a minor question, Mr. Clement. Why is this case simply under the regs? There's no reference for the most part in the arguments to the underlying statute. So Justice Thomas, I mean, there's a circuit split on the interpretation of the regs. Yeah. We got circuit granted on the circuit split. Wanted to be faithful to that. So we've addressed the regs. We think we're right on the regs. But we also think that interpreting the regs, one of the first things you do is look at whether or not one interpretation of the regs is more consonant with the other underlying statute than the other interpretation of the regs. But at bottom, this case is a statutory case. In our very first answer, this joint appendix, page 33, we said he's exempt under the statute. So there isn't sort of a regulatory exemption that's separate from the statutory exemption. So at the end of the day, I think you always want to look back and see is our interpretation better and more consonant with the statute than theirs. And the answer is absolutely, because we're using sort of salary as a way to screen people into the exemption who are otherwise conceitedly executives, which is all the statute requires. They're using the regs to say that somebody who is conceitedly an executive and conceitedly, therefore, satisfies the statutory term is nonetheless not exempt because of the details, not even how he was paid or how he received his pay, but how his pay was calculated. Where's that in the statute? Justice Alito? Sotomayor? Justice Kagan? You know, just to pick up on that, it seems to me that if there is a statutory argument here, your test flunks it just as well as the government's does, because the statutory argument goes something like this. The statute doesn't really care about how people are paid. So the government says, well, the regs do care about how people are paid, and the government tries to justify how that fits with the statute. But you care just as much about how people are paid under 602. You're just saying a different, you know, you're making different arguments about how people are paid. But your argument about how people are paid fits with the statute just as poorly, if it is poorly, as the government's does. So, Justice Kagan, I'm happy to have this case decided just on the statute, because my friends on the other side have conceded that we perform executive functions. And they did that for purposes of both exemptions, not just for the short-form one. So if this is about the statute, we win. As to whether our position is more consonant with the statute, I say it is, because we still ultimately focus on the statutory phrase. We just have sort of a screening that basically says, look, if you make more than this, we're going to give you, like, a quick look. But we never say, if we don't like the way you're paid, you are forbidden from getting the statutory exemption, no matter how highly you are paid, and no matter how much you are an executive administrative professional. And that's the burden of the other side's argument. And I think if you care about the statute, it lasts. Did you forfeit the statutory argument? Absolutely not, Your Honor. And I don't see how – I'm trying – you know, I'm using the argument to try to say we have the better interpretation. Because I don't think the briefs at all mentioned the statutory argument below. You know, there's like half a sentence in a supplemental en banc brief. But other than that, I think that this whole argument about whether the focus on pay is consistent with the statute was not raised. I think it was raised – we show you where it was raised in our reply brief. I mean, but you already said, well, it's a sentence, so we cited the sentences. I mean, so we're not really that far apart. But I think we did enough. But in all events, again, what we're asking you ultimately to do – I mean, I'm happy to win this case on the statute. And that is ultimately what the case is about. But we have argued to a fairly well that we have the better interpretation of the regulations. And one metric of that is our interpretation of the regulations does not divorce the regulations from the statute. Thank you. Justice Gorsuch? You're not going to like these questions any better than those. I do want to follow up on that. I actually think you probably have a pretty good argument on the statute, which focuses on job function, whether it's executive or administrative. And I kind of took the dissent in the Fifth Circuit to focus on the fact that tool pushers are administrators. And that's just the nature of their job. And I think that's probably all right. But the regulations are all about pay, how you're paid, the mechanics of pay. And we've been down to the minutia of that for the last 40 minutes. And I just don't see that argument presented. And I just want to give you one last shot on why it isn't forfeited in this case. So it's not forfeited in this case, Justice Gorsuch, because the case has always been about whether ultimately the respondent is exempt under the statute. No, no. The question we granted cert on is whether you had to satisfy, what is it, 601 and 604 or both. Right. That's what we granted cert on. Absolutely. And I'm not trying to pull a bait and switch. I'm just telling you, at bottom, the case is always about statutory exemption. Where the circuits split, and what we haven't run away from, is the circuits are split as to whether 604 essentially conditions and modifies 601. We don't think it does for all the reasons we put forth elaborately in our brief. It seems to me quite an independent question whether 601 and 604, either of them, have anything to do with the statute or defy the statute, which is, I think, what your argument might otherwise have been. Well, here's what I think we have argued, and I think this is fairly – our argument is if 604 is not incorporated, then 601 is more consonant with the statute than if 604 is incorporated. Okay. I understand that argument. I understand that's before us. Okay. And with respect to that, I told you you're not going to like any of these questions. You're not going to like this one either. Okay? The circuit split we took up was whether you needed to satisfy just 601 or both 601 and 604. Okay. You've heard a lot of questions today about whether you even meet 601. And let's say you don't. Okay? Let's say you don't. And you lose right out of the starting gate. And so the circuit split isn't even implicated. Your choices at that stage are either to answer the 601 question adversely and send it back or to dig. Which do you like better? I told you you weren't going to like the question. I mean, I would prefer that you just answer the question because I don't think there's a basis for dig. And I think if you look at the cases on the other side of the circuit split, you will realize that there is no difference about whether we satisfy 601 versus those cases. Because all that's different in those cases – I understand that you think you're going to win on 601. I got it. But say you lose on 601. Would you rather hear that answer or would you rather dig? I'd rather hear we lose on 601 but the statutory question is still open on remand. I don't know if it is or not. I mean, you didn't raise it here that much I'm pretty sure about. Because there wasn't a circuit split on the statute. No, I know. You wouldn't have gotten here. But in fairness, I mean, if there's an embedded premise that somehow this is different from the first circuit or the second circuit case, I do want to address that because those cases involve the same basic issue, which is somebody whose pay is calculated on an hourly basis, which is a concern of 604, but have a weekly guarantee. So they're going to get at least $1,000. I got that. Okay. So if Judge Winter is wrong, too, and we're wrong, then you should tell us we're wrong. You shouldn't dig it because there's still a circuit split. Got it. Thank you. Justice Kavanaugh? On the statutory point, you obviously have a strong argument that the regs are inconsistent with the statute. But say it's not that precise question is not before us. Is that being litigated somewhere? I think there may be a case that litigates that. I don't know all the details of it, and I don't know whether it's focused on it. Why is that not being litigated somewhere, I guess? Because my understanding is that there's a lot of litigation going on about this topic, and it seems a pretty easy argument to say, oh, by the way, or maybe, oh, let's start with the fact that the regs are inconsistent with the statute, and the regs are, therefore, just invalid across the board to the extent they refer to salary. Yeah. Again, I don't know the details of it. I think there's a case that maybe attacks 604B just on that basis, but it's not quite the same issue here. But, you know, and I do, I mean, I want to be emphatic about this. I do think there's a difference for the statutory inconsistency argument with 601 as we interpret it and either 604B. Yeah, I'm not challenging that. I'm just saying if it's not here, if the statutory argument's not here, I'm sure someone's got to raise it because it's strong. Well, you just asked about it, so somebody definitely will raise it now if they weren't already. Yeah, well, the second point to follow up, you got a sentence in to Justice Alito, but if this were just about how the salary's paid by these employers, if it, going forward, you could change it to weekly, and that might have some cost, but I thought this whole thing was a lot of class action lawsuits with massive retroactive liability going back a lot of years. Is that? That's absolutely right. So the question of notice comes in on that. Exactly, and that's been a recurring consideration in this Court's cases. I mean, Christopher, integrity, staffing, the whole line of this Court's cases. And it's one thing, I mean, if the government had clearly articulated this position, A, it probably would have been challenged on statutory grounds immediately, but B, the industry could say, okay, I mean, some of this is kind of perverse because one of the things you can do is convert them all to hourly, which isn't going to make them feel like they're really executive, administrative professionals. I mean, they're probably happier the way it was, but in all events, the notice point is hugely important, and it's particularly important with respect to the highly compensated employees, because if you're talking about a universe of people that are getting paid over $100,000, if there was a footfall on the overtime calculations, the amount of liability is going to be huge, whereas if you're talking about the people that the statute really cares about, the people who are only making $35,000 or $40,000, if you blow the overtime calculation for them, the amount of damages is going to be much smaller. So it would really be perverse here, and I think, you know, obviously this was a factor in this Court's Christopher's decision, when the people were making, the sales reps were making $70,000 a year, the respondents were making three times that much. Thank you. Justice Barrett? Mr. Clement, I just want to clarify the nature of the concession. You said you went on the statute because the other side has conceded that your client was executive, administrative, professional. Was that the concession? Because, you know, then it's clear you went under the statute. Or was the concession that he performed some administrative duties? So, I mean, to be clear, and my friends will, I'm sure, be even clearer, but the concession was that he satisfied all of the duties under 541.100. So he satisfied the long form of the duties test for an executive. That's what the concession is. Now, they are going to tell you that, no, salary is, in a sense, part of the duties test, and so you don't really qualify for the statutory exemption, not because of your duties, but because of the way your pay was calculated. So they're not going to say they conceded to everything that they think the statute requires. I think they've conceded to everything that I think the statutory requires, because I read that statute and I don't see anything about salary certainly not as a disqualifying factor. Oh, it's my understanding that the point of the regs, and, you know, the statutory question is not before us, but that the Secretary of Labor was permitted by the terms of the statute to define what it means to be an EAP in a bona fide way so that employers don't manipulate job descriptions to evade the requirements of the act. Well, and that does bring us back to the regulatory question, because, boy, is that not a concern for people that are getting paid $100,000 and more. And why do we know that? Don't take my word for it. Look right at the regulation. It says high compensation is a strong indicator of exempt status. So, I mean, you know, if you think about it, like one way to think about the question here is what's better for workers that are being paid $100,000 or more? What's a better indicator that they're a bona fide executive? The fact that they're being paid $100,000 or more, or the fact that their minimum guarantee is no more than two-thirds of their total compensation? Well, I agree with you the result is counterintuitive here, but Labor didn't exempt altogether highly compensated employees. And I guess at the regulatory point, the thing that I have trouble getting past is in 604B, you know, putting aside 602, 604B refers specifically to employees' earnings being computed on an hourly, daily, or shift basis, saying, no, no, no, they can still be paid. That doesn't defeat their, you know, payment on a salary basis. So it's kind of like a specific controlling the general here. This specifically refers to how your client's pay was computed. But a couple of points on that. I mean, another way to look at this is the specific controls the general is whether you're paid more than $100,000. So I don't think you can decide this case on the specific controls of the general. And then if you're trying to break the tie, which specific is sort of more specific or more persuasive here, then you look to the other factors, which is the statute expressly incorporates 602, but not 604. 602 is labeled salary basis. 604 is labeled minimum guarantee plus extra. That's really important because Section 601 itself doesn't address salary basis independently. It does it by cross-reference. But it does address the issue of minimum guarantee plus extra. And it duplicates 604A because it says minimum guarantee plus extra, hunky-dory. And then it's contradictory to 604.B because 601 says your total compensation can totally dwarf your guaranteed compensation. You can get $175,000 in other compensation as long as you get just $455 a week. So they don't care at all about the reasonable relationship. They bless an unreasonable relationship. So that's why it seems to me such a strong inference that Section 601 incorporates 602 but not 604, which is the question presented. Justice Jackson? Yes. So, Mr. Coleman, I've heard you say several times in various ways that you think the regulatory scheme is about ensuring a minimum amount and not the weekly guarantee, sort of hand-waving the idea of weekly guarantee. And I want to posit something quickly and then ask you about a hypo. I want to posit that 602 in the salary basis is actually parallel to 604 in that they're both ensuring the minimum weekly amount. Under 602, you get it in the form of a salary, predetermined, coming to you no matter how much you work. Under 604, if your setup is not that, if you're not set up predetermined amount coming in weekly, the regulation guarantees that you still have this minimum weekly amount through 604. All right, that's how I see it. And let me tell you why I think it matters. Because the regularity of a predetermined amount is how people pay mortgages. So I don't know or it doesn't really matter that he might get $100,000 over the course of the year. What he has to know is how much is coming in at a regular clip so that he can get a babysitter, so that he can hire a nanny, so that he can pay his mortgage. It's about, I think, the predictability and the regularity of payment. So let me ask you this hypothetical. We have a nurse who does the covered functions and makes $455 for a 12-hour shift. That's about $38 an hour. Some weeks, this nurse is called in for one shift and makes the $455. Some weeks, he's called in for four shifts and makes $1,820. He doesn't know because of the way his situation is set up. He doesn't know from week to week how much he's going to make. It just depends on how many shifts his supervisor asks him to work. And all that's guaranteed is at least one shift, right, for the predetermined amount of $455. So some weeks, he makes that. Some weeks, he makes more. But if he doesn't work any shift, he doesn't get anything. I think that under your theory, as you've articulated it, he would be a salary basis worker and would not be entitled to overtime for the weeks that he does the four or five shifts. Am I right about that in terms of how you have set this up? So I think you're basically right, but can I just add a couple of thoughts to that? One is the statute doesn't talk about whether you're a salary basis worker, at least not 601. I know, I'm talking about the regulation. We're setting aside for the moment the statute. If I said the statute, I misspoke. The regs don't care that you're a salary basis worker. 601 in particular cares that your total compensation includes $455 per week paid on a salary basis. So I actually agree with you that the thrust of 604 is to ensure that there is a certain regularity of the minimum amount that you are guaranteed to make every week. How could you say that 601 doesn't care if you're a salary worker? What is the meaning of paid on a salary basis? If it didn't care, it would just say your total amount of compensation must include at least $455 a week. But it then includes the words paid on a salary basis, and 602 tells us that being paid on a salary basis means a predetermined regular amount. I think the only disconnect is I don't think it cares whether you're a salaried worker. Because when I hear salaried worker, I think, well, that must mean that's where you get most of your pay. All it cares about is whether you are paid at least $455 a week paid on a salary basis. And those are different things. I'm sorry, I'm light bulb. So you're saying the minimum amount has to be the regular thing coming in. Exactly. But how does that solve for my problem in terms of understanding that the agency and to some extent Congress could care about the variability that keeps people from being able to do other things in their lives? Pay a mortgage or whatever. It matters whether you are in a situation in which you're only paid for the amount that you actually work versus you know that you have a predetermined weekly amount coming in. I think what matters for paying your mortgage and most other things is what's the minimum you're going to have guaranteed coming in. It's not whether you make a, you know, if you get an $800 mortgage payment. It's on the size of your mortgage, right? Right, right. But here's the thing. I mean, I do think Congress cares and the regs care about the minimum. So you can make your $800 mortgage payment with your $963 guarantee. But it's very clear that 601 for the highly compensated workers doesn't care about the variability of your total annual compensation. And one of the reasons is the catch-up payment. It says you can have a catch-up payment. It can be a huge catch-up payment at the end of the year. And it creates sort of a safe harbor. So somebody that, you know, they thought was going to make $100,000 but they had a bad year. They're only making $50,000. They can have a big payment at the end of the year. That's not consistent with a concern about stability on the top line. It is still consistent that you get at least $455 every week paid on a salary basis. Thank you, counsel. Mr. Sullivan? Mr. Chief Justice, and may it please the court, for over 80 years the FOSA has made two things clear. One, a bona fide executive must be paid on a salary basis. And two, a pure daily rate employee is not paid on a salary basis. The highly compensated employee regulation requires payment on a salary basis. There's only two ways to get there under the regulatory scheme. The first is Rule 602, the general rule. The second is a special rule for workers who are paid on a hourly, daily, or shift basis. There are a number of textual, historical reasons why HELIX is unable to meet the FOSA's general rule. You can look to the first two sentences. It's fantastic. There has to be an amount earned. That amount earned has to be a predetermined amount. That predetermined amount has to be fixed on a basis in time. And it is under the regulation, a weekly or less frequent basis. Mr. Hewitt was paid on a daily basis. Mr. Clement, my friend, just said that he was paid on a daily basis. It's conceded at the Joint Appendix 113. Daily basis is more frequent than weekly basis. The next sentence of 602A says that the full salary has to be paid without regard to the day's work. Mr. Hewitt was paid with regard to the day's work. And there are several other reasons throughout the text. Now, even though HELIX cannot meet the general rule under 602, the Department of Labor provided a special rule under 604B for hourly, daily, or shift employees. Maybe they can meet the salary basis. But HELIX concedes they can't satisfy that section. They disclaim that they should even be of use to this section, which was made to help employers. That concession is telling because it's meant to avoid sham salaries. I welcome the Court's questions. Do you think your client's salary is a sham salary? I don't believe my client received a salary at all. He was paid on a day rate. If they call that a salary, then it is a sham because they— Do you think his compensation was a sham? I think it would be only a sham if they called it a salary, which it is not a salary. The difficulty is, just for the average person looking at it, when someone makes over $200,000 a year, they normally think of that as an indication that it's a salary. You certainly don't normally think of someone making $200,000 a year as a day laborer. You've got this ill fit. If you were talking about $20,000 a year, people would say that makes sense. I think that's the difficulty that you're having. A point that Mr. Clement made, the regs say that's their own—the Department of Labor's regs say that's an indication that you are highly compensated, the executive. I don't know. I think your difficulty is just the visual. For you to say that that's not a salary to the average person is a difficulty. Your Honor, I take your question obviously in great faith. 601C, which they're referencing, does say that, look, high pay is a strong indication even of exempt status. And I don't disagree if that's the regulation. But to be in the capacity of a bona fide executive, which is what the statute requires, the salary— But it doesn't define—the statute doesn't really define it. That's the difficulty. Sure, but it allowed, obviously, the department to do so. And the department looked and they talked to industry. And in fact, back in 1940, if you look at the Stein report, who's the hearing officer, page 19, he said it was almost universally recognized by industry, including three oil companies on note six of that report, that salary was universally recognized as the hallmark of exempt status. There's a reason that it's not just a concession on duties. Yes, I conceded that Mr. Hewitt otherwise—that Hewitt could otherwise satisfy the duties test. But there are three tests that the secretary implements, all to be for their statutory directive of who is a bona fide executive. And the most important of those tests is the salary basis test. They did not pay him that. And I'd like to make— Can I stop you there on the salary basis test, 602? Yes. Because the key word is receives. That's the first keyword. And then the second two keywords are or part. So on receives, it doesn't say computes or calculates as it does in 604. It says receives each pay period on a weekly or less frequent basis, a predetermined amount constituting all or part of the employee's compensation. My understanding is he received every other week at least $963. Is that accurate? Yes. Okay. Why doesn't that answer the 602 argument? Okay. Under 602, the receives means the employee has to actually get it. What does he have to receive? He has to receive the predetermined amount. What is the basis of the predetermined amount? It has to be on a weekly or less frequent basis. Where do you get that? A predetermined amount constituting all or part of the employee's— $963 is part of his compensation, and it's more than $455, and he receives it every other week. Sure, Your Honor. What I do is I take what the Department of Labor says all or part means, and that is to look at Rule 604A. Because all or part of an employee's compensation, a salary or a wage, isn't the only thing that an employee gets. For example, a salaried employee might get a bonus at the end of the year. A salaried employee might get a commission. And so what the Department of Labor said is there are instances over and above the minimum guarantee that an employee may earn that's all or part of the compensation. That doesn't destroy the salary basis. But if we're talking about time worked within the work week, within the normal work week, that is not—sorry, that's based on time. The Department in 604A gives an example that says time-based extras beyond the normal work week— I guess I'm missing—just focus on 602. I'll go back to 602. You have a separate 604 argument, and deal with that. On 602, it says receives, not calculates, and it says part, and he receives every other week—I'm repeating myself now—$963. Sure. I feel like 602 is just straightforward, unless—and I think this was the importance of some of Justice Kagan's questions— receives in context doesn't really mean the actual physical receipt. But, you know, assuming it does, then I don't understand your 602 argument. It's best explained that when this regulation was implemented today, the Secretary of Labor was not concerned about the vice of biweekly paychecks. It is not meant to regulate the frequency of pay. It is meant to regulate the method of pay, and the method is on a weekly— Okay, but it doesn't say that. But I take your point. That's a decent argument, but I just—it does not say that. It says receives. Right. It does say it because that means whether the employee got it. You can't just tell an employee you're going to get paid a certain amount and not pay it. You've got to make good on what you're telling the person. But what is the thing, Justice Kavanaugh, that has to be received? The predetermined amount. What is the predetermined amount? It's the guarantee. What is the guarantee based on? A weekly or a less frequent basis? All, at best. At best. Can I just ask a factual question? Was he guaranteed at least 963 a week? I don't believe he was guaranteed it, but I'm just going to assume it for this because there's no point in arguing it. But, you know, his day rates changed around as employees. But that wasn't his predetermined weekly amount, right? Some weeks he could make more than the 950. Some weeks he could. There was not a predetermined weekly amount in this case, correct? Correct. Fantastic. Because it's not a predetermined. Hold on. Hold on. There was a predetermined weekly amount because it was 963 was part of the total compensation. Wasn't that predetermined that he would get at least 963? This is my first argument. I don't know how to go. I'm just going to transfer them both. The regulation doesn't say predetermined part, right? It is the predetermined weekly amount, a part of which can be given to you, blah, blah, blah. So the predetermined weekly amount is what we care about. And here in this situation we have a predetermined daily amount. 100%. At the end of each week, we don't know how much he's going to make for the week. That's the point. It has to be a predetermined amount on a weekly or less frequent basis. That is not this. At best, if it's 963, that is a predetermined daily amount. That's at best. And then my friend's argument was, oh, well, you know, we'll just go tell the mortgage company he only earns $963 a week. So, my friend realizes, of course, that the compensation is greater for him, but what is the salary? He doesn't know, because it's a post-determined amount based on the days that are actually worked by my client. So, Helix could not set up like a direct deposit for him, right? Because they don't know. You know, usually a direct deposit is like two weeks. You get a predetermined amount for the two weeks, and you set it up with your bank so your employer is not even paying attention to it. That's the sort of standard salary, at least as I think the common understanding is. But here, Helix can't do that, because they don't know what his payment is for the week. They have to pull the time sheet and figure out how many hours he works. So, doesn't that make him more of the daily labor, hourly labor kind of workers for whom the overtime rule is supposed to apply rather than the regular salaried person? Yes, it does. And the Department of Labor has discussed this time and time again in 1959 in the Cantor Report on page 2. It talks about people who are working squad leaders compared to who are executives. During our argument, one of the judges said, this sounds like a sergeant major. And, you know, at some level, a sergeant major is an enlisted person, and that person may make more money than an officer. But it is different. The roles are fundamentally different. Would you agree? Go ahead. Go ahead. I don't think a sergeant major makes over $200,000 a year. Not yet, Your Honor. Maybe. Could I ask you about the statute? Yes. If we interpret that in accordance with the way the terms would have been understood by ordinary people when the FLSA was enacted, it says that the overtime rule shall not apply to any employee employed in a bona fide executive, administrative, or professional capacity. Yes. You said you told somebody, okay, here's an employee who's going to make over $200,000 a year, or whatever the equivalent was back then, and the person is going to supervise other employees. Is that person employed in an executive, administrative, or professional capacity or not? What would the answer be? The answer should be, and I would assume would be going back in time, no, because that person is not paid on a salary basis, which was almost universally recognized back then to be, as you said, and Christopher, Justice Alito, in the functional, what's the character? Capacity is the dictionary definition. What's the character? Okay, I get your argument. So you're saying it's not the ordinary meaning of these terms. It's a specialized meaning. Their terms of art, executive, administrative, or professional capacity in this context have a special meaning. That's your argument. It may be a good argument. I certainly hope so, but plus, plus, if you went back in time to 1949, a little before my time, but I would actually think that people would say, that's the big boss. Big boss gets paid a salary, right? They know what that guy gets paid. So it's only the CEO? It's not the head of a division? I've had a lot of jobs. The person who's telling me what to do is usually who I think of as the boss. So the only executive is the top person? No, Your Honor, certainly not. He's not the top person here either, and yet I said he had the duties of an executive. Mr. Sullivan, isn't your point that the reason the form of the payment relates to the character of an executive, because as Justice Sotomayor said at the beginning, the executive who's a salaried person can take the afternoon off on Friday and still pay his mortgage because he's still going to get the full amount. The difference is that when someone is not a salaried worker, they have to work each hour or each day to get the payment, and I know it's a minimum amount, says Mr. Clement, that he gets for each day that he works, but he still has to actually work it. He can't take the afternoon off. That's the difference between the executive characterized person and the person who would otherwise be a daily worker, even if that daily worker makes a very high amount. That is correct. An executive is given latitude to their time that the daily wage worker is not given. I mean, does somebody who's out working on an oil rig have the option as a practical matter to take the day off? I'd like to take the day off and play golf. Bring the helicopter out here to take me back to the mainland so I can play golf. Maybe not that, but you know what they have the right to do? Maybe they're kids playing a soccer game on shore, and they can watch it over the Internet, but they're not going to be able to do that if that means that you can't work that day. Okay, no, I understand that. I mean, as fascinating as this microscopic examination of the particular terms of these particular regulations are, I am also concerned about two other things, and they may cut in different directions. One is the effect of this on lower-income workers, not people who are making $200,000 a year. And the second is how you think the energy industry should structure the pay of these people who work out on oil rigs in order to comply with your understanding of the regulations. The first question was, how does this impact lower workers in the right frame? It certainly is not Helix's argument, because if a paycheck that's over some minimum equals a salary, that means every hourly, daily, piecework employee is lost under Rule 602, and they now might be a salaried employee, which means that the company will argue if they have the duties and the rest, but it ruins the salary basis test for lower-income workers. But another reason, if you let a company make a minimum guarantee and pay them the rest, and you call that a salary, well, you're only giving salary protections against the deductions to the minimum, but not to the rest. Like, if there's jury duty, if Mr. Hewitt had a five-day work week and the first day is only guaranteed and the rest of the week he had to go to jury duty, it means the company can't – the company is just perfectly allowed to deduct because they're going to say it's the minimum that's protected, not the rest. Mr. Clement answered that – my friend answered that question, maybe so. With respect to Your Honor's second question about the oil industry, first, yes, there are methods of complying. I'm primarily a management lawyer. There was multiple ways that they could have been within the regulations. They chose not to do so. What are those ways? Something like what the government outlined at the end of its brief. Certainly. I mean, yes, they could pay them a hourly wage if they wanted to with overtime. They could, as the government said in the last page of their brief, issue a guarantee. The Fifth Circuit said $4,000. The government said $4,600. But the point of that is to approximate that the compensation received by Mr. Hewitt would have approximated – would have been something close to a salary as opposed to what it actually was, what we all actually know what it was, a day rate paid by the day, which is not a salary under the statute, under the regulations, under any compensation scheme. That's not what we have here. On 602 – sorry to go back to it. Justice. Can a worker with a salary basis on a salary basis make extra in his or her paycheck for commissions or bonuses or what have you? They can make extra for commissions. They can make extra for any non-time-based related activities under Rule 604A. So then my question is the reference to predetermined amount must be a predetermined minimum because you're not going to know going paycheck to paycheck how much you're going to have in extra commissions, correct? Yes, but the regulation answers what that is, and that is it has to be – that predetermined amount is answered. It's on a basis of time, just like – I understand that argument. I just thought predetermined minimum, it must be what they're getting at because you're not going to know the exact total amount until you figure out how much commission or bonus or time and a half you get. No, I'm cognizant of time, but if you look at 602B6, if you look at 604A, if you look at 604B, where they talk about the full salary and the concerns of splitting up time and all the rest, the minimum amount they're talking about is the weekly salary. Sorry, you've answered that well. So on 604, which is the question we granted on, Mr. Clement says the specifics should control the general, and that 601 is a specific reference to how highly compensated employees should be considered, and this blends into Justice Thomas' question as well. Why isn't that correct, that you look at 601 as its self-contained piece for highly compensated employees? Cross-reference is 602, but in context it does not pick up the 604, and in fact it might not make sense with 604 given the catch-up payments could be $70,000 or what have you. I think that's the argument, kind of the lead argument on the other side was wrong with that. 601 is not a stand-alone exemption. The only exemptions that exist under the law are the executive, administrative, and professional. Therefore, we look at 601C, which actually says what is the reason for this provision, and the reason is to streamline the duties test because compensation is a strong level of exempt status, but not everything. And it is simply a streamlined way to satisfy one of the other exemptions. That's all that it does, and it still incorporates expressly the beating heart of the white-collar exemptions, which is the salary basis test. Thank you, counsel. Justice Thomas? Justice Gorsuch, anything further? Yeah. On the reasonable relationship in 604, this is the part that I think is most inconsistent, that if you're going to have a catch-up payment at the end of the year, which is explicitly authorized by 601, that's never going to be a reasonable relationship, a large catch-up payment. So then what is it that makes 601 seem incoherent? And the answer to that is that 601 should not be read together with 604. I think that's the argument on the catch-up payments show that reasonable relationship can't possibly apply to highly compensated employees. May I respectfully respond? Yes, please. I'd like you to think about it in a different way, the way that it was intended. Under Rule 601, total annual compensation discusses what are the types of compensation an employee who earns a lot of money can be counted towards this salary level test of $100,000 or $107,000. But the person still has to be paid on a salary basis. Rule 604 is not addressing that. Rule 604 is addressing the principle who is paid on a salary basis. 601 assumes they're paid on a salary basis, requires it. The total compensation is what are the types of compensation that go to the new salary level. I hope I answered that question. Thank you very much. Justice Barrett? Justice Jackson? Thank you, Counsel. Mr. Yang? Mr. Chief Justice, and may it please the Court. The HCE regulation that Petitioner invokes applies only if the employee is paid on a salary basis. It doesn't answer what a salary basis is. It provides for additional compensation beyond the salary to meet the $100,000 threshold, but it doesn't excuse you from meeting the basic threshold, which all the exemptions require, of $455 on a salary basis. Under 602's general rule, that means the employee must receive payment on a weekly or less frequent basis. That is, the next sentence, the full salary for a week has to be provided without regard to the number of days or hours worked. By its very nature, a daily rate pay is paid with, not without regard to the number of days worked in a week. It therefore doesn't meet this general test. That's why the Court of Appeals said when it comes to a daily rate employee, the employer must comply with the alternative salary basis provisions of 604B. 604B provides an alternative. It benefits employers. It's not required. The point is, they didn't meet 604A, and they don't claim to meet 604B. I welcome the Court's questions. Mr. Yang, just one quick question. Can someone be functionally an executive but not meet these, but paid in a way that undoes that? If the question is, can you meet the duties requirements of an executive but not meet the exemption, the answer is yes, but it's because you're not fully functioning as an executive. The rulemaking, there have been multiple rulemaking hearings with evidence going back to the 40s. I'm only interested in the compensation features. Let's say the first year a person is salaried at $50,000 a year, or basically $200,000 as we have in this case. But then the second year, the pay structure is like the pay structure here. Does that person who was an executive in year one with a $200,000 salary cease to be an executive in the second year because of the pay structure? The answer is yes, because they're not a bona fide executive. What were they in the first year? Oh, no. In the first year, if you get a $200,000 true salary, like they split $200,000 into 52, and you get that every week regardless of how much you worked that week, that's a salary. But the reason why that we look at this, right here we're looking back on a case, right? But the employee has to look forward. The employee at the beginning of the week doesn't know if you're paid on a daily basis how much you're going to be paid. But if you're a salaried employee where your compensation is on a weekly or less frequent basis, you know you're going to get X amount for a week. That's why they talk about the regulation 602A talks about a predetermined amount. You have to know in advance what is the predetermined amount for the week. And the next sentence is critical. It talks about, therefore, the full salary has to be provided without regard to the number of days or hours worked. That means for the week you get this chunk. Now, my friend says you can just get a guarantee that exceeds $455, and that's your salary. So that's analogous to saying, look, on day one I'm going to pay you $100. On day two I'm going to call that your salary, your weekly salary. On day two I give you another $100, and it goes through the week. No one would say that that's a salary. You're paid a daily wage because your weekly salary is what you get for your work during the week. 602B6, this is on page 3A, or excuse me, 6A of the government's brief. It provides a special rule for the first and last week that an employee works, and it says there you can pay the proportionate amount of the full salary for the first and last week. But then the second sentence is important. It says, however, you're not paid on a salary basis within the meaning of the regulations if you're employed occasionally for a few days and you only get a proportionate amount of the weekly salary. That just reinforces you get a few-day salary, it's not a weekly salary. Then you look at 604B. This is on 604A on the following page. The reason, Justice Kavanaugh, that it says your salary is all or part of your compensation is because compensation can include more than salary. Compensation can include bonuses, that type of thing. But importantly, this is the third category here, this is on page 7A, the additional compensation that is beyond the salary can include compensation based on hours worked for work beyond the normal work week. So, for instance, you can get paid if you normally work 40 hours a week for hours 40 to 50, but the first 40, that has to be a weekly salary. Mr. Yang, I'm sorry to refer back to the statute, but I think it is significant. I gather that the statement, the concession or not, concerning executive duties was not that the individual was an executive, but that he performed executive duties. That's my understanding. Do you know, is the nature of the work he did divisible in some way, that he could say these are executive duties, but these other ones are not, or is performing executive duties what he does? Well, there are certain things that he does, and again, because it wasn't disputed, this wasn't fully flushed out in the record, but there are certain things that meet the duties requirements. However... But do you have any idea if that's like 90% of his work or 80%? That is not in the record, and I don't have any independent knowledge of that. But, Your Honor, I think what's important is that Congress said that a bona fide executive is subject to exemption, and then it gave the power to the Department of Labor not only to define that term, but to delimit the term. That's broad authority that the courts already recognized as broad authority. And when they did look at what constitutes an executive, one of the critical things, this is almost unanimously agreed in all contexts that they're paid on a salary basis. Why? Why is an executive paid on a salary basis? Because it reflects the autonomy and discretion that the executive has to manage his or her own time. The employer vests that discretion. It's not like you have to show up on Monday and I'll give you $1,000. You're paid for the general value of the time. That has a real world impact. You know, predictability is important. If I get $500 a day, it matters to me whether I'm going to get $2,500 a week, or maybe just sometimes $500 a day, because my life, I have to organize to know, am I going to just only have $500? Well, but we heard earlier that the most significant characteristic of an executive is the amount of pay. That's actually not quite correct. I'd like to point the court to the actual... It's not correct. That's not what it says, or that's not what we heard earlier. That's not what it says. The 2A of the government's brief, this is the highly compensated exemption. And if you just hear it on page 1A, that's the executive exemption. The executive exemption requires three things. You have to be paid $455 a week on a salary basis. First two requirements. And then there are three due-to-use tests you have to meet. You have to meet all of them. Look at 601. 601D1 says, with respect to the total compensation, it must include at least $455 a week on a salary or fee basis. That parallels exactly the general requirement for the executive. All it says is you have to meet that part of the executive. The difference for the highly compensated employee is that you can get a relaxed due-to-use test. Instead of meeting all three of the requirements, you can meet just one due-to-use requirement. But that comes only if your total compensation, which has to include your salary, but it can include these other things, exceeds $100,000. And that's why the ratio that you were concerned about is completely... It's a different ratio. Let me ask about that and interrupt you. I'm sorry. You can be a highly compensated employee by getting $30,000 in guaranteed and a $70,000 catch-up, correct? $455 a week. The $30,000 has to be paid on a salary basis. Paid on a salary basis, so you receive it. Each week you're getting, let's say... Say $500 a week. Okay. Say $500 a week. Yep. Regardless of how much you work. Yep. And then you get a $70,000 catch-up. Yep. That qualifies you as a highly compensated employee, correct? It would. It would. Now, the catch-up is not salary. And here's the inconsistency that I think the other side raises, and you may have an answer to this, but that is explicitly authorized by 601. The $30,000 plus the $70,000 catch-up. That's explicitly authorized, as I understand it. Yeah. You can correct me if that's wrong, but I think you've... But that's for compensation. Let me finish. Yeah. Let me finish. And that would not satisfy, however, the 604 reasonable relationship test. But that deals with different things. Let me explain. Your compensation includes but is not limited salary. 604B is the alternative to terminate the way to say whether you get a salary, right? And the reason there's a proportion there is because the premise of 602 is you get a full weekly salary without regard to the number of days or hours worked, right? So if you get payment based on each day that you work, it's not 602A. So 604A says, hey, but you can calculate, and I'd like to discuss calculate versus receive. Let's put that aside. I'll put that aside. I just want to know 3070 is authorized by 601, and they say, and I just want your answer to this, that that can't be consistent with 604 because that requires a reasonable relationship between the guaranteed amount, which we agreed was 30, and the amount actually earned, which we agreed was more than 100. No, no, no, no, no. That's not correct. That's not reading the whole provision. It's the amount earned for the time worked during a normal work week. And then if you go further on, it says, no, no, this does not apply to things like bonuses. That reasonable relationship, and the reason why that exists is because if you're paid on a daily basis, you're not really receiving anything that is like a salary unless that guarantee is basically what you would get as a weekly salary. And so the reasonable relationship says, look, what would you get normally for the full week? And if you have a guarantee that has a reasonable relationship to that, that's going to function as a salary. But that's a different question. The second question for 601 is a second and different question, which is once you've established you're on a salary basis, you also have to show total compensation exceeding $100,000. These are like different ratios for different functions. Mr. Yang, can I add something that hasn't come up yet, and I just want to make sure that you get a chance to address it, and that is what do we take from the fact that both the statute and the regulation seem to have separate provisions for certain categories of people that are exemptions that are not in EAP that cover hourly work for that category. So what am I talking about? If you look at the statute, I understood that the statute had a carve-out from the FLSA rule for computer analysts. And those people, are you familiar with that one? There's a lot of exemptions in the FLSA. The thrust of my question is I noticed that there are exemptions in the statute for computers and an exemption elsewhere in the regulation for movie industry people. Those people make very high hourly rates compared to people who would otherwise be in EAP. If Petitioner was right in this case, why would we have needed those carve-outs? You don't. You wouldn't. The reason that there's a – I think the movie exception is just regulatory. It's useful because they petitioned for rulemaking saying, in our industry there's no good way to actually pay a salary. And so they petitioned for rulemaking. They got an exception for a salary basis allowing daily rate pay. You would never need that. You would never need that if they were right about 602A. And the oil and gas industry could do the same thing, could they not? Well, they could. Whether they would get it is another issue. If they're saying the nature of our payments and the way we're paid in this industry is not amenable to salaries in the way that you've listed it here, we need an exemption, then they could potentially petition the way the movie industry did. They could. Get a separate – And the danger of my friend's argument is it applies not just to those who paid $200,000. It applies to people who make down to $24,000 a year. And if those hourly wage people are converted into salary basis employees, then there's going to be a whole swath of people who have vested interests. These are real people in the world that are going to lose their overtime. They're not going to be able to – And nurses are just one of the many examples of these people. And the reason that the whole highly compensated exemption is a red herring is because it just builds on the normal exemption, which builds on the normal salary basis test and has a relaxed duties requirement, only a relaxed duties requirement because it has the same salary basis requirement as the normal exemption. What do these exemptions do to Mr. Sullivan's argument that being employed in an executive, administrative, or professional capacity was understood at the time of the FLSA to require that a person be paid on a salary basis? If the secretary has the authority to say, no, we're going to exempt people who are not paid on a salary basis, that seems inconsistent. No, I don't think so. So let me give you an example. I'd like to talk about the compute versus received and also about paycheck frequency, but let me give you the example here in the regulations. For the executive exemption, that's the normal rule we've been talking about. But Section 101 deals with people with a 20% equity stake in the company that generally engage in management of the company. Those people are exempt regardless of salary. So the ultimate question is, what constitutes an executive? And you can do that through these duties, right, three duties tests normally. You can go to one if you're highly compensated. But you also always, regardless for all of the exemptions, you have to be paid on a salary basis, and that's been a hallmark of executive discretion since the 40s. Thank you, counsel. Justice Thomas? Justice Alito? I don't think you've answered why you use received in 602 and compute in 604. The reason why you receive on a weekly or less frequent basis in 602 is you actually have to receive it, right? The whole point of 604 is you do not have to receive the pay on a daily basis. The whole point of 604 is you get a weekly guarantee that functions like a salary. So if you only work one day, you don't receive daily pay. You receive the guarantee. That's why it says the pay is calculated on a daily basis, but what you actually receive may be that weekly guarantee, and the weekly guarantee has to function like a full weekly salary because it has a reasonable relationship to what you would earn for the entire week. That's why there's a textual difference there. And that's also, I think, this concerns paycheck frequency, too. I mean, this is all interrelated, but the whole idea of paycheck frequency, there's no sensible reason to distinguish an executive from a salaried worker or a wage worker based on when you receive a paycheck. That's regulated by state law. Justice Kagan, anything further? Justice Gorsuch? Justice Kavanaugh? Justice Barrett? Justice? Thank you. Thank you, counsel. Rebuttal, Mr. Clement? Thank you, Mr. Chief Justice. Just a few points in rebuttal. It is conceded here that the respondent makes over $200,000 a year and is guaranteed to receive at least $963 in each week in which he works. Yet their position is that he receives zero in salary, not a penny. Now, we would say the far more logical reading of what 602 actually says is to say he receives at least $963 in salary every week in which he works. And then you compare that to the statutory or rather the regulatory test. Total compensation has to include $455 per week paid on a salary basis. He satisfies it. The contrary view requires you to say that this person gets no salary at all, which defies reality and common sense. And it doesn't make any difference that this is a day rate because what matters is the day rates above the weekly minimum. We could easily say, okay, you make $963 if you work a day, even a minute, and we give you a weekly guarantee of $963. It would be redundant. Anytime somebody's paid a day rate that's above the weekly minimum, they satisfy the terms of 602. Second point I want to make is I thought it was very revealing that my friends on the other side really couldn't answer the question about what 602 means, particularly with respect to receives and all or part, without directing you to 604. But the problem with that is twofold. One is if you get to 602, it uses calculates rather, computes rather than receives. So the regulators knew how to use those differently. The second problem, though, and I think this is very telling, is if you start to hear what their theory is, they say, well, for 602, you can get commissions and things like that. But if it's pay for time work, then you have to figure out what the normal work week is. Or if you get to 604B, you have to figure out what the person's scheduled normal work week is. And this is all in the context of 601. That's supposed to be a streamlined, easy to administer exemption that captures the common sense instinct that somebody's getting six figures is very, very likely to be exempt. Now, there's no threat to lower income workers here, and I want to be clear about this. Just because 602 allows you to figure out that somebody's paid a certain amount on a salary basis, if they don't qualify for the HCE 601 exemption, then you still have to go to 604B. And you still have to satisfy that, and that protects the lower income workers. This is all about 601 and its interaction with 604. And with respect to those two provisions, 604 is duplicative and contradictory. And this I want to reinforce as well, that 601 is absolutely a standalone exemption. You get that from the text of the regulation, which says you can be exempt under this section. But you also get it from the fact that it's got that subsection D that's entirely duplicative of 541.3. And you also get it from the fact that in the regulatory history, they had to add the $4.55 per week paid on a salary basis after the proposed regulation. They wouldn't have needed to do that if 601 automatically picked up $600, which has the $4.55 for every executive employee. So further evidence that 601 operates independently as a standalone exemption, and it's supposed to be streamlined. On the carve-outs, with respect, the carve-outs for special workers aren't carve-outs just for the special workers over $100,000. So we're not asking for a carve-out for the whole industry. We're just asking for a sensible rule that says that when somebody conceitedly does executive functions and is paid six figures, that that person is, as the regulatory language says, strongly likely to be an exempt person. The detailed inquiry into both salary details and into duties is not worth the candle. And the last thing I'll leave you with is just the thought that if you listen to the other side, everything they're talking about is like, does he get a true salary? But the question under the statute at the end of the day is, is he truly a bona fide executive? And that's all but conceited in this case. And our view of the regulation allows it to coexist with the statute. Their view of the regulation completely divorces it from the statutory text. Thank you. Thank you, Mr. Clement. Mr. Sullivan, the case is submitted.